1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11                            ----oo0oo----

12   SHIRLEY GARNETT, on behalf of      CIV. NO. 2:14-2851 WBS DAD
     herself and all others
13   similarly situated,               MEMORANDUM AND ORDER RE: MOTION
                                        TO REMAND
14                Plaintiff,

15        v.

16   ADT LLC, and Does 1 through
     50, inclusive,
17
                  Defendants.
18

19                            ----oo0oo----

20        Plaintiff Shirley Garnett brought this putative class

21   action against defendant ADT LLC, asserting claims arising out of

22   the alleged failure to reimburse her and others for work-related

23   expenses and failure to provide wage statements required by

24   California law.  Defendant removed the action from San Joaquin

25   County Superior Court under the Class Action Fairness Act of

26   2005.  28 U.S.C. §§ 1332(d), 1446.  Plaintiff now moves to remand

27   pursuant to 28 U.S.C. § 1447(c).

28
                                   1

1    I.    Factual and Procedural History

2            Plaintiff worked for defendant during the four years

3    preceding this lawsuit.  (FAC ¶ 10 (Docket No. 1).)  During that

4    time, plaintiff alleges that defendant required her and other

5    employees to use their personal vehicles in the course of

6    performing their jobs without reimbursing them for the expenses

7    they incurred.  (Id. ¶¶ 19, 28.)  Plaintiff also alleges that

8    defendant failed to provide her and other employees with hard

9    copies of their wage statements, as required by California law.

10   (Id. ¶¶ 15, 23, 28.)  Her First Amendment Complaint[1] ("FAC")

11   asserts claims under California Labor Code section 2802,

12   California Business & Professions Code sections 17200 et seq.,

13   and California's Private Attorneys General Act of 2004, Cal. Lab.

14   Code §§ 2698, et seq.  (Id. ¶¶ 18-29.)  As part of plaintiff's

15   third claim, she seeks statutory damages under California Labor

16   Code section 226, which governs the furnishing of wage statements

17   to employees.  (See id. ¶ 28 (citing Cal. Lab. Code § 226).)

18           Defendant removed the action to federal court on

19   December 5, 2014, asserting that, based solely on the statutory

20   penalties available under California Labor Code section 226(e),

21   the amount in controversy is approximately $6,794,550.  (Def.'s

22   Notice of Removal ¶¶ 15-16 (Docket No. 1).)  Defendant originally

23   supported this number with the declaration of Doug Cuellar, a

24   manager employed by defendant to maintain and review human

25   resources data.  (See Cuellar Decl. (Docket No. 3).)  Defendant

26   ───────────────
27       [1]    Plaintiff reportedly amended her Complaint before
     serving the original Complaint on defendant.  (See Def.'s Notice
     of Removal at 2-3.)

28

2

1   has since acknowledged a typographical error in Cuellar's

2   declaration misstating the time period that Cuellar used to

3   calculate the number of wage statements issued by defendant.

4   (See Def.'s Opp'n at 8-9 (Docket No. 10).)  It corrected this

5   error by submitting a new declaration listing the correct dates,

6   this time by HR Workforce Analyst Lori Pencis.  (See Pencis Decl.

7   (Docket No. 10-1).)  Both declarations arrived at the same

8   number.  Plaintiff disputes defendant's calculations and

9   maintains that the amount in controversy fails to reach the

10  required $5 million minimum.  (Pl.'s Mot. to Remand (Docket No.

11  8).)

12  II.  Discussion

13          "[A]ny civil action brought in a State court of which

14  the district courts of the United States have original

15  jurisdiction, may be removed by the defendant or the defendants,

16  to the district court of the United States for the district . . .

17  where such action is pending."  28 U.S.C. § 1441(a).  If "it

18  appears that the district court lacks subject matter

19  jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

20          The Class Action Fairness Act of 2005 ("CAFA") grants

21  district courts original jurisdiction over civil class action

22  lawsuits if the parties are minimally diverse and the amount in

23  controversy exceeds $5 million.  28 U.S.C. § 1332(d)(2).

24          Plaintiff's FAC does not specify a particular amount of

25  alleged damages.  In such cases, "the removing defendant bears

26  the burden of establishing, by a preponderance of the evidence,

27  that the amount in controversy exceeds [$5 million]."  Sanchez v.

28  Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).  The

3

1    Supreme Court recently clarified this burden by explaining that

2    "the defendant's amount-in-controversy allegations should be

3    accepted when not contested by the plaintiff or questioned by the

4    court."  Dart Cherokee Basin Operating Co., LLC v. Owens, ____

5    U.S. ____, 135 S. Ct. 547, 553 (2014).  "If the plaintiff

6    contests the defendant's allegations . . . both sides submit

7    proof and the court decides, by a preponderance of the evidence,

8    whether the amount in controversy requirement has been

9    satisfied."  Id. at 553-54.  "[N]o antiremoval presumption

10   attends cases invoking CAFA, which Congress enacted to facilitate

11   adjudication of certain class actions in federal courts."  Id. at

12   554.

13          A. Statutory Damages

14          The parties' disagreement over the amount in

15   controversy stems from their different interpretations of

16   California Labor Code section 226(e), which provides:

17          An employee suffering injury as a result of a knowing
             and intentional failure by an employer to comply with
18          subdivision (a) is entitled to recover the greater of
             all actual damages or fifty dollars ($50) for the
19          initial pay period in which a violation occurs and one
             hundred dollars ($100) per employee for each violation
20          in a subsequent pay period, not to exceed an aggregate
             penalty of four thousand dollars ($4,000), and is
21          entitled to an award of costs and reasonable
             attorney's fees.
22

23   Cal. Lab. Code § 226(e).

24          Defendant interprets "subsequent" to mean a pay period

25   that occurs chronologically after the first pay period in which

26   an employer fails to comply with section 226(a).  (Def.'s Opp'n

27   at 10-11.)  After noting that a one-year statute of limitations

28

                                  4

applies to plaintiff's wage-statement claim, defendant calculated

the amount in controversy using three different penalty rates:

> (1) a set of 1,040 employee wage statements where the number of wage statements for each employee in the relevant period was such (at least 41) that the $4,000 maximum penalty is reached with regard to them; (2) additional "initial" wage statements (total of 1,751) for employees who are not included in the 1,040 putative class members . . . because they did not have a sufficient number of wage statements to reach the maximum; and (3) additional "subsequent" wage statements (a total of 25,465) for the individuals included in category (2).

(Id. at 9-10.)

Plaintiff argues that this computation overestimates the amount in controversy because "subsequent" has a special meaning within the California Labor Code that triggers heightened statutory penalties only after an employer has learned that its conduct violates the Labor Code.  (Pl.'s Mem. at 7-10.) Plaintiff asserts that, if defendant correctly states the number of wage statements issued within the one-year limitation period, the correct amount in controversy is $4,064,800.  (Id. at 9-10.)

Plaintiff relies principally on Amaral v. Cintas Corp., a California Court of Appeal case that rejected a purely temporal understanding of the term "subsequent" and interpreted its use in California Labor Code sections 210 and 225.5 to require that "the employer has been notified that it is violated a Labor Code provision" before higher penalties are triggered.  163 Cal. App. 4th 1157, 1207-09 (1st Dist. 2008).  Amaral did not examine section 226(e).  However, plaintiff argues that its interpretation applies to the Labor Code generally by pointing to a federal court's application of Amaral to California Labor Code

1  section 2699(f)(2), see Chen v. Morgan Stanley Smith Barney, LLC,

2  Civ. No. 8:14-01077 ODW, 2014 WL 4961182, at *2 (C.D. Cal. Oct.

3  2, 2014), and, in this district, Magistrate Judge Thurston's

4  application of Amaral to section 226(e).  See Perez v.

5  WinnCompanies, Inc., Civ. No. 1:14-01497 LJO, 2014 WL 5823064, at

6  *7 (E.D. Cal. Nov. 10, 2014) (finding that a defendant faced only

7  $50 penalties for each failure to provide an accurate wage

8  statement under section 226(e)).

9        It is a "well-established canon of statutory

10 interpretation" that the use of different words or terms within a

11 statute demonstrates an intent to convey a different meaning for

12 those words.  Spencer Enterprises, Inc. v. United States, 345

13 F.3d 683, 689 (9th Cir. 2003) (citing SEC v. McCarthy, 322 F.3d

14 650, 656 (9th Cir. 2003)).  It is therefore significant that

15 sections 210, 225.5, and 2699 use the term "subsequent" in a

16 different way than section 226(e).  The term "subsequent" in

17 those sections modifies the word "violation," so that a defendant

18 faces enhanced penalties "for each subsequent violation."[2]  The

19        [2]   California Labor Code section 210 states:

20      (1) For any initial violation, one hundred dollars
        ($100) for each failure to pay each employee.  (2) For
21      each subsequent violation, or any willful or
        intentional violation, two hundred dollars ($200) for
22      each failure to pay each employee, plus 25 percent of
        the amount unlawfully withheld.
23

24      Cal. Lab. Code § 210(a) (emphasis added).

25 California Labor Code section 225.5 provides:

26      (a) For any initial violation, one hundred dollars
        ($100) for each failure to pay each employee. (b) For
27      each subsequent violation, or any willful or
        intentional violation, two hundred dollars ($200) for
28      each failure to pay each employee, plus 25 percent of

                              6

1    <u>Amaral</u> court thus reasoned that an initial "violation" could

2    encompass multiple failures to pay an employee under sections 210

3    and 225.5.  See <u>Amaral</u>, 163 Cal. App. 4th at 1209 (noting that

4    "each failure to pay each employee" may have "occurred in an

5    initial violation").

6             This contrasts with section 226(e)'s use of the term

7    "subsequent" to modify the noun "pay period," so that enhanced

8    penalties apply "per employee for <u>each violation</u> in a <u>subsequent</u>

9    <u>pay period</u>."  Cal. Lab. Code § 226(e) (emphasis added).  It is

10   not at all clear that the <u>Amaral</u> court would have interpreted

11   this language the same way it interpreted the language of

12   sections 210 and 225.5.  In fact, one of the parties in <u>Amaral</u>

13   argued that sections 210 and 225.5 should be distinguished from

14   "examples of other statutes that expressly impose penalties 'per

15   pay period,'" see <u>Amaral</u>, 163 Cal. App. 4th at 1208 (citing Cal.

16   Lab. Code § 2699(f)(2)), but the court's opinion leaves ambiguous

17   whether the court agreed with that understanding.  Although Judge

18   Thurston applied <u>Amaral</u>'s approach to section 226(e) in <u>Perez</u>,

19   she did so without analyzing the difference in language between

20

21        the amount unlawfully withheld.

22   Cal. Lab. Code § 225.5 (emphasis added).

23   California Labor Code section 2699 provides:

24        If, at the time of the alleged violation, the person
          employs one or more employees, the civil penalty is

25        one hundred dollars ($100) for each aggrieved employee
          per  pay  period  for  the  initial  violation  and  two

26        hundred dollars ($200) for each aggrieved employee per
          pay period for each <u>subsequent</u> <u>violation</u>.

27   Cal. Lab. Code § 2699(f)(2) (emphasis added).

28

                                    7

1    the two statutes or discussing the intent behind section 226's

2    penalties.  See Perez, 2014 WL 5823064, at *7 (E.D. Cal. Nov. 10,

3    2014).  The court thus finds that opinion of limited persuasive

4    value here.

5          The Amaral court may also have found significant the

6    use of the phrase "[f]or each subsequent violation, or any

7    willful or intentional violation, . . . ."  See Cal. Lab. Code

8    § 210(a); Cal. Lab. Code § 225.5.  This statutory language

9    reinforces Amaral's conclusion that a subsequent violation occurs

10   only after an employer gains notice of the Labor Code's

11   requirements, making any post-notice violation a "willful or

12   intentional" one.  Notably, section 226(e) does not contain the

13   phrase "willful or intentional violation."  Instead, the statute

14   predicates all liability upon a "knowing and intentional failure

15   by an employer to comply with subdivision (a)."  Cal. Lab. Code §

16   226(e).  This difference casts more doubt on the application of

17   Amaral here.

18         Having distinguished Amaral, and in the absence of

19   controlling authority, the court will interpret the language of

20   section 226(e) according to its plain meaning.  Defendant faces a

21   $50 penalty for each violation in an initial pay period, and a

22   $100 penalty per employee for each violation that occurs in a pay

23   period after the initial pay period.  Accordingly, the court will

24   accept defendant's estimate of the amount in controversy as

25   approximately $6,794,550,[3] and finds more likely than not that

26   _____
         [3]     Notably, defendant urges the court to reject Amaral for
27   purposes of calculating the amount in controversy, but it
         "reserves the right" to argue that Amaral applies on the merits.
28   (Def.'s Opp'n at 10.)

1  this case exceeds the $5 million minimum required by CAFA.[4]

2       B. Attorneys' Fees

3          Even if the court were to apply the Amaral approach and

4  adopt plaintiff's lower estimate of statutory damages under

5  section 226(e), the court must also consider attorneys' fees.

6  "[W]here an underlying statute authorizes an award of attorneys'

7  fees, either with mandatory or discretionary language, such fees

8  may be included in the amount in controversy."  Guglielmino v.

9  McKee Foods Corp., 506 F.3d 696, 700 (9th Cir. 2007) (considering

10 attorneys' fees for purposes of calculating the amount in

11 controversy for a case asserting violations of California's Labor

12 Code).  Section 226(e) provides for "an award of costs and

13 reasonable attorney's fees."  Cal. Lab. Code § 226(e).  "The

14 reasonableness of attorney's fees, when such fees are

15 unascertainable on the face of the complaint, can be calculated

16 by looking to other attorney's fees awards in similar cases."

17 Garcia v. ACE Cash Express, Inc., Civ. No. 14-0285 DOC, 2014 WL

18 2468344, at *5 (C.D. Cal. May 30, 2014) (citing Kroske v. U.S.

19 Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005)).

20         Assuming that plaintiff correctly estimates the

21 statutory damages available under section 226(e) as $4,064,800,

22 an attorney award of $935,200--or approximately 23 percent of

23 estimated recovery--would suffice to push this case over CAFA's

24

25     [4]    It is also worth noting that none of these calculations
    take into account plaintiff's other causes of action.  Neither
26 party has addressed potential recovery under plaintiff's other
    claims, including her claim for failure to reimburse work-related
27 expenses pursuant to California Labor Code section 2802 (FAC ¶¶
    18-20).  Presumably, this claim could further increase the amount
28 in controversy.

1   $5 million requirement.  Defendant argues that a reasonable

2   attorneys' fee in this case is 25 percent of total recovery.[5]

3   (Def.'s Opp'n at 13.)  In support, it offers two California cases

4   that included, among other claims, a claim similar to the instant

5   one for failure to provide accurate wage statements.  See Godfrey

6   v. Oakland Port Servs. Corp., 230 Cal. App. 4th 1267, 1271 (1st

7   Dist. 2014); Pellegrino v. Robert Half Int'l, Inc., 182 Cal. App.

8   4th 278, 283 (4th Dist. 2010).

9         In Godfrey, a California Court of Appeal upheld a

10  $487,810.50 award of attorneys' fees in a case where the

11  plaintiff's class was awarded $964,557.80--a fee award of more

12  than 50 percent of total recovery.  See Godfrey, 230 Cal. App.

13  4th at 1270, 1272, 1288.  The court in Pellegrino employed the

14  "lodestar" method for calculating attorneys' fees from a common

15  fund.[6]  See Pellegrino, 182 Cal. App. 4th at 285-87.  The court

16  upheld the use of a 1.75 multiplier, ultimately awarding

17  $978,121.98 in attorneys' fees.  In common fund cases, the Ninth

18  _____

19        [5]   Defendant has not provided the court with information
      on plaintiff's counsel's hourly billing rate or estimated the
      amount of time the case will require.  Defendant only offers a
20    percentage estimate based on the total recovery.

21        [6]   Common fund cases are distinct from other cases
      involving an award of attorneys' fees.  Ordinarily, the amount of
22    attorneys' fees awarded does not impact the amount of recovery.
      However, "[u]nder regular common fund procedure, the parties
23    settle for the total amount of the common fund and shift the fund
      to the court's supervision.  The plaintiffs' lawyers then apply
24    to the court for a fee award from the fund."  Staton v. Boeing
      Co., 327 F.3d 938, 969 (9th Cir. 2003)  "The court then
25    determines the amount of attorney's fees that plaintiffs' counsel
      may recover from this fund, thereby diminishing the amount of
26    money that ultimately will be distributed to the plaintiff
      class."  Id. (quoting Florin v. Nationsbank of Georgia, N.A., 34
27    F.3d 560, 563 (7th Cir. 1994)).

28
                                    10

1  Circuit as also approved a "benchmark" percentage of 25 percent

2  when considering what percentage of a fund to award in reasonable

3  attorneys' fees.  See In re Bluetooth Headset Products Liab.

4  Litig., 654 F.3d 935, 942 (9th Cir. 2011).

5          The cases provided by defendant do not align perfectly

6  with the present action, and therefore, they cannot provide a

7  faultless basis on which to estimate attorneys' fees.  No two

8  cases are ever perfectly alike.  The court must nonetheless do

9  its best to estimate attorneys' fees, and in light of these

10  cases, the court finds that defendant's fee estimation of 25

11  percent of recovery is a reasonable one.  Even from plaintiff's

12  lower calculation of statutory damages ($4,064,800), this equates

13  to a fee of approximately $1,016,200.  The total amount in

14  controversy thus exceeds $5 million.

15          IT IS THEREFORE ORDERED that plaintiff's motion to

16  remand be, and the same hereby is, DENIED.

17  Dated:  February 10, 2015

18  WILLIAM B. SHUBB
19  UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

11