UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SHIRLEY GARNETT, on behalf of herself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ADT, LLC, and DOES 1-50, inclusive,<br><br>　　　　　Defendants. | CIV. NO. 2:14-02851 WBS AC<br><br><u>MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u> |

----oo0oo----

　　　Plaintiff Shirley Garnett brought this putative class action against defendant ADT LLC, asserting claims arising out of defendant's alleged failure to reimburse for work-related vehicle expenses and failure to provide accurate wage statements as required by California law.  Presently before the court is plaintiff's motion for preliminary approval of the class action settlement.  (Docket No. 80.)

1

To avoid repetition, the court will refrain from reciting the factual and procedural background, which remains the same as in its October 6, 2015 Order granting plaintiff's partial motion for summary judgment on plaintiff's itemized wage statement claim and denying defendant's cross-motion for summary judgment. (Oct. 6, 2015 Order (Docket No. 33).)

I. Discussion

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litig., Third, § 30.41 (1995)).

The Ninth Circuit has declared a strong judicial policy favoring settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, where, as here, "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

   A. Class Certification

A class action will be certified only if it meets the four prerequisites identified in Rule 23(a) and additionally fits within one of the three subdivisions of Rule 23(b). Fed. R. Civ.

2

P. 23(a)-(b).  Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, the court must conduct a rigorous inquiry before certifying a class.  See Califano v. Yamasaki, 442 U.S. 682, 701 (1979); Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982).

### 1. Rule 23(a) Requirements

Rule 23(a) restricts class actions to cases where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These requirements are more commonly referred to as numerosity, commonality, typicality, and adequacy of representation.

#### a. Numerosity

"A proposed class of at least forty members presumptively satisfies the numerosity requirement." Avilez v. Pinkerton Gov't Servs., 286 F.R.D. 450, 456 (C.D. Cal. 2012); see also, e.g., Collins v. Cargill Meat Solutions Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011) (Wanger, J.) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.").  Here, plaintiff estimates the proposed class will contain approximately 2,100 members.  (See Pl.'s Mot. for Prelim. Approval of Class Settlement ("Pl.'s Mot.") at 1 (Docket No. 80-1).)  This easily satisfies the numerosity requirement.

#### b. Commonality

Commonality requires that the class members' claims

3

"depend upon a common contention" that is "capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011). "[A]ll questions of fact and law need not be common to satisfy the rule," and the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

The proposed class has two subclasses: the "Wage Statement Settlement Class" and the "Vehicle Expense Reimbursement Class." (Pl.'s Mot. at 16.) The Wage Statement Settlement Class includes all employees who worked as sales representatives for defendant from October 1, 2010 to the date this Order is signed. (Suppl. Workman Decl. Ex. A, Joint Stipulation and Agreement of Compromise and Settlement of Class Action ("Settlement Agreement") ¶ 2.23 (Docket No. 81).) The Vehicle Expense Reimbursement Class includes all employees who worked as sales representatives for defendant from October 1, 2010 to the date this Order is signed and employees who worked for defendant as sales managers from July 1, 2013 to the date this Order is signed. (Id. ¶ 2.24.) The class would be comprised of individuals alleging, like the named plaintiff, that defendant failed to record their total hours worked on their wage statements and to reimburse them for all expenses incurred while driving their personal vehicles for work. Due to the common core of salient facts and legal contentions, the proposed class meets

4

the commonality requirement.

### c. Typicality

Typicality requires that the named plaintiff have claims "reasonably coextensive with those of absent class members," but their claims do not have to be "substantially identical." Hanlon, 150 F.3d at 1020.  The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

The putative class members allege a simple set of facts that is essentially identical to that alleged by the named plaintiff.  Both the class members and the named plaintiff were allegedly injured by being inadequately reimbursed for driving their personal vehicles and unable to ascertain their total hours worked from their wage statements.  While each class member worked for defendant for different amounts of time during the relevant period and, as a result, is owed different amounts, class members' claims appear to be reasonably coextensive with those of the named plaintiff.  Moreover, the differences in the amounts owed are taken into account by the settlement agreement, which allots payments based on the number of work weeks each class member was employed by defendant during the class period. (Pl.'s Mot. at 9.)  The proposed class therefore meets the typicality requirement.

### d. Adequacy of Representation

To resolve the question of adequacy, the court must

make two inquiries: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. These questions involve consideration of a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." Brown v. Ticor Title Ins., 982 F.2d 386, 390 (9th Cir. 1992).

There do not appear to be any conflicts of interest. The named plaintiff's interests are generally aligned with the putative class members. As discussed above, the class members suffered a similar injury as the named plaintiff and the definition of the class is narrowly tailored. See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625-26 (1997) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.").

While the provision of an incentive award raises the possibility that the named plaintiff's interest in receiving that award will cause its interests to diverge from the class's interest in a fair settlement, the Ninth Circuit has specifically approved the award of "reasonable incentive payments." Staton, 327 F.3d at 977-78. The court, however, must "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Radcliffe v. Experian Info. Sys., Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). "In general, courts have found that $5,000 incentive payments are reasonable."

1 | Hopson v. Hanesbrands Inc., Civ. No. 08-0844 EDL, 2009 WL 928133,
2 | at *10 (N.D. Cal. Apr. 3, 2009) (citing In re Mego Fin. Corp.
3 | Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); In re SmithKline
4 | Beckman Corp., 751 F. Supp. 525, 535 (E.D. Pa. 1990); Alberto v.
5 | GMRI, Inc., 252 F.R.D. 652, 669 (E.D. Cal. 2008)).

6 |            In this case, the settlement agreement provides an
7 | incentive award of $7,500 to the named plaintiff.  (Pl.'s Mot. at
8 | 9.)  While the incentive award for the named plaintiff is
9 | relatively high, it does not, on its face appear to create a
10 | conflict of interest given that it is proportionate to the
11 | settlement awards the class members stand to receive.  The gross
12 | settlement amount in this case is $2.7 million.  Subtracting the
13 | $7,500 incentive award, $891,500 proposed attorney's fees,
14 | $90,000 proposed costs, and $18,750 proposed Private Attorneys
15 | General Act allocation to be paid to the California Labor &
16 | Workforce Development Agency, the total available funds for class
17 | members is $1,692,250.  Assuming all 2,100 class members submit
18 | claim forms, the average recovery per class member will be about
19 | $805.83 (not taking into account the number of work weeks each
20 | class member was employed).  Class members could recover an even
21 | higher amount if all 2,100 class members do not submit claim
22 | forms.

23 |            In addition, plaintiff provides important justification
24 | for the incentive award by explaining that she has dedicated at
25 | least forty hours to this case--consulting with her attorney;
26 | traveling from Stockton to Sacramento for her deposition;
27 | assisting in answering document requests, interrogatories, and
28 | requests for admissions; searching for documents and requested

7

information; and making herself available to answer any potential questions during the depositions and mediation sessions. (Garnett Decl. ¶ 10 (Docket No. 80-2).) Accordingly, the court preliminarily finds that the proposed incentive award does not render plaintiff an inadequate representative of the class.

In addition, the named plaintiff and her counsel seem to have vigorously prosecuted the action on behalf of the class. "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." Hanlon, 150 F.3d at 1021. The parties conducted a significant amount of discovery, participated in two full mediations, and fully briefed motions and cross-motions for summary judgment before deciding to settle. Plaintiff's counsel was therefore informed about the strengths and weaknesses of this case when she decided to accept the terms of the mediator's proposed settlement agreement. (Pl.'s Mot. at 8.)

The court also finds no reason to doubt that plaintiff's counsel is qualified to serve as class counsel and assess the value of the settlement. Plaintiff's counsel, Robin Workman, states that she and the Workman Law Firm have "extensive experience in wage and hour class action litigation." (Workman Decl. ¶ 31 (Docket No. 80-3).) Plaintiff's counsel specializes in employment law, particularly wage and hour enforcement on a class action basis, and has been lead counsel on a number of such cases. (Id.) Accordingly, the court concludes that the absence of conflicts of interest and the vigor of counsel's

representation satisfy Rule 23(a)'s adequacy assessment for the purpose of preliminary approval.

### 2. Rule 23(b)

Plaintiff seeks certification under Rule 23(b)(3), which provides that a class action may be maintained only if (1) "the court finds that questions of law or fact common to class members predominate over questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues."  Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 476 (E.D. Cal. 2010) (citing Hanlon, 150 F.3d at 1022).  The class members' contentions appear to be similar, if not identical.  Although there are differences in the total number of weeks worked by class members and whether they were employed as sales representatives or sales managers, there is no indication that those variations are "sufficiently substantive to predominate over the shared claims."  See id.  Accordingly, the court finds that common questions of law and fact predominate over the class members' claims.

Rule 23(b)(3) also sets forth four non-exhaustive factors to consider in determining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy":

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation

9

        concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The parties settled this action prior to certification, making factors (C) and (D) inapplicable. See Murillo, 266 F.R.D. at 477 (citing Windsor, 521 U.S. at 620).

      The damage calculation experts hired by plaintiff estimated that the range of potential recovery for this case ranges anywhere from $2.5 million to $11.7 million--predicting plaintiff's wage statement claim is worth between $1 million and $2.4 million, the standard roundtrip commute mileage claim $1.5 million, and the reimbursement rate claim between $0 and $7.8 million. (Pl.'s Mot. at 13.)  Class members might have an interest in individually controlling prosecution given that the $2.7 million settlement is on the lower end of this range. However, defendant strongly disputes the worth of plaintiff's reimbursement rate claim and, as will be discussed below, there are significant risks associated with going to trial in this case. Moreover, the costs of individually pursuing this litigation would be significant. As a result, class members' interest in pursuing individual suits is likely low.

      The court is also unaware of any concurrent litigation already begun by class members regarding the wage statements and reimbursements provided by defendant. Objectors at the fairness hearing may reveal otherwise. See Alberto, 252 F.R.D. at 664. At this stage, the class action device appears to be the superior method for adjudicating this controversy.

10

### 3. Rule 23(c)(2) Notice Requirements

If the court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2) governs both the form and content of a proposed notice. See Ravens v. Iftikar, 174 F.R.D. 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172-77 (1974)). Although that notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required. Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation omitted).

The settlement agreement provides that the claims administrator, ILYM, will provide notice to the class via bulk first class mail. (Settlement Agreement ¶ 9.2.4.) Defendant will provide the claims administrator with each class member's name, last known address, social security number, and number of weeks worked. (Id. ¶ 9.2.1.) The claims administrator will update the addresses using the National Change of Address Database and then mail to each class member the class notice, a claim form, and a claim form return envelope with prepaid postage. If notices are returned as undeliverable, the claims administrator will perform a skip trace procedure and, if a new address is secured, re-mail the notice. (Id. ¶ 9.2.5.) Fifteen days before the claims deadline, the claims administrator will also mail a reminder postcard to those class members who have not yet responded. (Id. ¶ 10.1.)

The notice explains the proceedings; defines the scope

1  of the class; informs the class member of the claim form
2  requirement and the binding effect of the class action; describes
3  the procedure for opting out and objecting; and provides the time
4  and date of the fairness hearing.  (Settlement Agreement Ex. B,
5  Notice.)  The court is concerned, however, with the text box on
6  page two of the notice entitled, "YOUR LEGAL RIGHTS AND OPTIONS
7  IN THIS LAWSUIT."  The box summarizes two options: (1) do nothing
8  or (2) ask to be excluded.  (Id. at 2.)  The "do nothing" box
9  states: "By doing nothing, you remain a member of the Settlement
10 Class.  If the court grants final approval of the Settlement, you
11 will be entitled to receive a settlement check.  At the same
12 time, you give up the rights to sue ADT for certain claims under
13 California law."  (Id.)  The court finds this summary to be
14 misleading because class members will not receive a settlement
15 check if they "do nothing."  Once this language is clarified to
16 make clear that class members must submit a claim form in order
17 to receive a settlement check, the content of the notice will
18 satisfy Rule 23(c)(2)(B).  See Churchill Vill., L.L.C. v. Gen.
19 Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory
20 if it 'generally describes the terms of the settlement in
21 sufficient detail to alert those with adverse viewpoints to
22 investigate and to come forward and be heard.'" (quoting Mendoza
23 v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).
24         The court is also satisfied with the claim form, which
25 reports the number of weeks worked by the class member during the
26 class period, based on defendant's records, and provides an
27 estimated settlement payment amount.  (Settlement Agreement Ex. A
28 at 1.)  Class members who want to make a claim for a different

1  settlement sum based on a different number of weeks worked may
2  set forth the information he or she believes correct in the claim
3  form, explain the basis for such belief, and submit supporting
4  written documentation within seven days of the claim deadline.
5  (Id. at 2.)
6          The court is satisfied that this system is reasonably
7  calculated to provide notice to class members and is the best
8  form of notice available under the circumstances.
9          B. Preliminary Settlement Approval
10         After determining that the proposed class satisfies the
11 requirements of Rule 23, the court must determine whether the
12 terms of the parties' settlement appear fair, adequate, and
13 reasonable.  See Fed. R. Civ. P. 23(e)(2); Hanlon, 150 F.3d at
14 1026.  This process requires the court to "balance a number of
15 factors," including:

> the strength of the plaintiff's case; the risk,
> expense, complexity, and likely duration of further
> litigation; the risk of maintaining class action
> status throughout the trial; the amount offered in
> settlement; the extent of discovery completed and the
> stage of the proceedings; the experience and views of
> counsel; the presence of a governmental participant;
> and the reaction of the class members to the proposed
> settlement.

Hanlon, 150 F.3d at 1026.  Many of these factors cannot be
considered until the final fairness hearing, so the court need
only conduct a preliminary review at this time to resolve any
"glaring deficiencies" in the settlement agreement before
authorizing notice to class members.  Ontiveros, 2014 WL 3057506,
at *12 (citing Murillo, 266 F.R.D. at 478).

13

1   At the preliminary stage, "the court need only
2 'determine whether the proposed settlement is within the range of
3 possible approval.'"  Murillo, 266 F.R.D. at 479 (quoting
4 Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).
5 This generally requires consideration of "whether the proposed
6 settlement discloses grounds to doubt its fairness or other
7 obvious deficiencies, such as unduly preferential treatment of
8 class representatives or segments of the class, or excessive
9 compensation of attorneys."  Id. (quoting W. v. Circle K Stores,
10 Inc., Civ. No. 04-0438 WBS GGH, 2006 WL 1652598, at *11-12 (E.D.
11 Cal. June 13, 2006)).
12          1. Negotiation of the Settlement Agreement
13          Courts often begin by examining the process that led to
14 the settlement's terms to ensure that the agreement is "the
15 result of vigorous, arms-length bargaining."  See, e.g., West,
16 2006 WL 1652598, at *11-12; In re Tableware Antitrust Litig., 484
17 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("[P]reliminary approval
18 of a settlement has both a procedural and a substantive
19 component.").
20          Plaintiff's counsel states that the settlement was
21 reached after formal and informal discovery, plaintiff's own
22 independent investigation and evaluation, extensive motions
23 briefing, and two mediations.  (Workman Decl. ¶ 21.)  She
24 declares that, in ultimately deciding to accept the mediator's
25 proposal, she took into account the uncertain outcome and risks
26 of litigation and the uncertainty associated with class
27 certification.  (Id.); see La Fleur v. Med. Mgmt. Int'l, Inc.,
28 Civ. No. 5:13-00398, 2014 WL 2967475, at *4 (N.D. Cal. June 25,

2014) ("Settlements reached with the help of a mediator are likely non-collusive."). In light of these considerations, the court finds no reason to doubt the parties' representations that the settlement was the result of vigorous, arms-length bargaining.

### 2. Amount Recovered and Distribution

In determining whether a settlement agreement is substantively fair to the class, the court must balance the value of expected recovery against the value of the settlement offer. See Tableware, 484 F. Supp. 2d at 1080. This inquiry may involve consideration of the uncertainty class members would face if the case were litigated to trial. See Ontiveros, 2014 WL 3057506, at *14.

As discussed above, the damage calculation experts hired by plaintiff estimated that the range of potential recovery for this case is between $2.5 million and $11.7 million. (Pl.'s Mot. at 13.) The $2.7 million settlement is within, but on the lower end, of this estimated value range. Further, the court notes that the settlement agreement requires class members to take the affirmative step of opting in to receive payment and opting out if they do not wish to be part of the settlement class. (Id. ¶¶ 9.3.1.3, 9.6.) Class members who do not request to be excluded will release defendant from their wage statement and reimbursement claims. (Id.) Therefore, there is a risk that some members of the class will opt into the judgment by default, thus releasing defendant, but get no recovery simply because they fail to timely return the claim form.

While the settlement amount is on the low-end of the

15

1  expected recovery range and the agreement contains a potentially
2  unfair opt-in/opt-out requirement, there are many uncertainties
3  associated with pursuing litigation that justify this recovery.
4  Defendant contends that it reimbursed class members for all
5  expenses incurred and plaintiff would not have been able to
6  certify its reimbursement claims.  (Pl.'s Mot. at 14.)  Further,
7  there were risks of significant delay if defendant challenged
8  plaintiff's motion for class certification or any final judgment
9  in favor of plaintiff.  Defendant disagreed with this court's
10 October 6, 2015 Order granting plaintiff partial summary judgment
11 on her wage statement claim, as was evidenced by defendant's
12 unsuccessful motion for reconsideration and motion for
13 certification of the Order for interlocutory appeal, (Docket Nos.
14 48-49), and made clear it intended to appeal any final judgment
15 in plaintiff's favor.  (Pl.'s Mot. at 14.)

16         In light of the uncertainties associated with pursuing
17 litigation, the court will grant preliminary approval to the
18 settlement because it is within the range of possible approval.
19 Murillo, 266 F.R.D. at 479 (quoting Gautreaux v. Pierce, 690 F.2d
20 616, 621 n.3 (7th Cir. 1982)).

21           3. Attorney's Fees

22         If a negotiated class action settlement includes an
23 award of attorney's fees, that fee award must be evaluated in the
24 overall context of the settlement.  Knisley v. Network Assocs.,
25 312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio, 291 F.R.D. at
26 455.  The court "ha[s] an independent obligation to ensure that
27 the award, like the settlement itself, is reasonable, even if the
28 parties have already agreed to an amount."  In re Bluetooth

16

1   Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).
2          The settlement agreement provides that plaintiff's
3   counsel will apply to the court for a fee award of up to 33% of
4   the gross settlement amount, or $891,000, for the 1,306 hours
5   spent on the case.  (Settlement Agreement ¶ 5.1; Workman Decl.
6   ¶ 34.)  Defendant agrees not to oppose plaintiff's petition for
7   the fee award so long as it does not exceed 33%.  (Settlement
8   Agreement ¶ 5.1.)  If the court does not approve, in whole or in
9   part, the fee award, it will not prevent the settlement agreement
10  from becoming effective or be grounds for termination.  (Id.)
11         In deciding the attorney's fees motion, the court will
12  have the opportunity to assess whether the requested fee award is
13  reasonable, by multiplying a reasonable hourly rate by the number
14  of hours counsel reasonably expended.  See Van Gerwen v. Gurantee
15  Mut. Life. Co., 214 F.3d 1041, 1045 (9th Cir. 2000).  As part of
16  this lodestar calculation, the court may take into account
17  factors such as the "degree of success" or "results obtained" by
18  plaintiff's counsel.  See Cunningham v. County of Los Angeles,
19  879 F.2d 481, 488 (9th Cir. 1988).  If the court, in ruling on
20  the fee motion, finds that the amount of the settlement warrants
21  a fee award at a rate lower than what plaintiff's counsel
22  requests, then it will reduce the award accordingly.  The court
23  will therefore not evaluate the fee award at length here in
24  considering whether the settlement is adequate.
25         IT IS THEREFORE ORDERED that plaintiff's motion for
26  preliminary certification of a conditional settlement class and
27  preliminary approval of the class action settlement be, and the
28  same hereby is, GRANTED.

17

IT IS FURTHER ORDERED that:

(1) The claims administrator shall notify class members of the settlement in the manner specified under section nine of the settlement agreement, with the slight adjustment to the text of the notice discussed above;

(2) Class members who want to receive a settlement payment under the settlement agreement must accurately complete and deliver the claim form to the claims administrator no later than thirty calendar days after the date the class notices are mailed. Class members who want to make a claim for a different settlement sum must set forth the information he or she believes is correct in the claim form, explain the basis for such belief, and submit supporting written documentation within seven days of the claim deadline. Within five days of receiving the claim form, the claims administrator will send a deficiency notice to any class member whose claim form contains irregularities and provide the class member with fifteen days to mail a written response curing the deficiencies;

(3) Class members who want to object to the settlement agreement must either deliver written objections to the claims administrator postmarked no later than thirty calendar days after the notice date or appear in person at the final fairness hearing. The objection must include the objecting person's full name, current address, all objections and reasons for the objections, and any supporting papers. Any class member who submits an objection remains eligible to submit a claim form and receive monetary compensation;

(4) Class members who fail to object to the settlement

1 agreement in the manner specified above shall be deemed to have
2 waived their right to object to the settlement agreement and any
3 of its terms;

4             (5) Class members who want to be excluded from the
5 settlement must, within thirty days from the date class notices
6 are mailed, submit the request for exclusion form to the claims
7 administrator.  Class members who opt out shall not receive any
8 settlement proceeds or be bound by any of the terms of the
9 settlement, including the release provisions;

10             (6) The Wage Statement Settlement Class is
11 provisionally certified as all employees working as sales
12 representatives for defendant from October 1, 2010 to the date
13 this Order is signed.  The Vehicle Expense Reimbursement Class is
14 provisionally certified as all employees working as sales
15 representatives for defendant from October 1, 2010 to the date
16 this Order is signed and employees working as sales managers for
17 defendant from July 1, 2013 to the date this Order is signed;

18             (7) Plaintiff Shirley Garnett is conditionally
19 certified as the class representative to implement the parties'
20 settlement in accordance with the settlement agreement.  The law
21 firm of Workman Law Firm, through Robin Workman and Aviva Roller,
22 is conditionally appointed as class counsel.  Plaintiff and
23 Workman Law Firm must fairly and adequately protect the class's
24 interests;

25             (8) The parties agree that ILYM will serve as the
26 claims administrator;

27             (9) If the settlement agreement terminates for any
28 reason, the following will occur: (a) class certification will be

automatically vacated; (b) plaintiff will stop functioning as class representative; and (c) this action will revert to its previous status in all respects as it existed immediately before the parties executed the settlement agreement;

  (10) All discovery and pretrial proceedings and deadlines are stayed and suspended until further notice from the court, except for such actions as are necessary to implement the settlement agreement and this Order;

  (11) The fairness hearing is set for June 27, 2016 at 1:30 p.m., in Courtroom No. 5, to determine whether the settlement agreement should be finally approved as fair, reasonable, and adequate;

  (12) Based on the date this Order is signed and the date of the fairness hearing, the following are the certain associated dates in this settlement:

   (a) Defendant shall provide the claims administrator the necessary contact information for class members by May 2, 2016 and the claims administrator shall mail notice by May 9, 2016;

   (b) Class members shall file objections, requests for exclusion, and claim forms by June 8, 2016;

   (c) Pursuant to Local Rule 293, plaintiff shall file a motion for attorney's fees no later than 28 days prior to the final fairness hearing;

  (13) The parties shall file briefs in support of the final approval of the settlement no later than June 13, 2016.

Dated:  April 18, 2016

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

20